**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| TANIESHA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV790 |
| | ) | |
| CIRCLE K STORES INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned Magistrate Judge for a recommendation on Defendant's Motion to Dismiss (Docket Entry 24), which contends that "Plaintiff's Complaint should be dismissed because she has failed to comply with the Court's [o]rder to respond to written discovery and [has] continue[d] to prejudice [Defendant] by failing to engage in basic discovery, including her recent failure to appear for her deposition" (id. at 1). (See Docket Entry dated June 25, 2024.) Because Plaintiff repeatedly has failed to comply with both the Court's directives and her discovery obligations under the Federal Rules of Civil Procedure (the "Rules"), the Court should dismiss this action.[1]

---

1 The instant Motion also requests that the Court "award [Defendant] all costs and attorney's fees incurred appearing for Plaintiff's deposition and in filing th[e instant] Motion." (Docket Entry 24 at 2.) Defendant did not develop any argument in support of that request in its Memorandum (see Docket Entry 25 at 1-8) and this Recommendation thus does not address that issue, see Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its
(continued...)

## INTRODUCTION

After Plaintiff commenced this employment discrimination action pro se in state court (see Docket Entry 2 (the "Complaint")), Defendant timely removed this action to this Court (see Docket Entry 1) and answered (see Docket Entry 6). The Court (per Chief United States District Judge Catherine C. Eagles) subsequently entered a Standard Preliminary Order (the "SPO"), advising the parties, inter alia, as follows:

1) "[t]he Court enforces the requirements of the Local Rules, as modified and supplemented [by the SPO]" (Docket Entry 7 at 1);

2) "factual assertions unsupported by citation to specific evidence in the record will be disregarded" (id.; see also id. at 2 ("Statements in briefs are not evidence . . . .")); and

3) "[t]he Court expects the parties to promptly move the case towards final resolution and to build in time for coping with delays and obstacles" (id. at 3; see also id. ("Scheduling Orders will not be modified merely because the parties so agree.")).

The Clerk mailed the SPO, as well as a Notice setting the Initial Pretrial Conference (see Docket Entry 8 at 1), to Plaintiff at the address she listed on the Complaint (compare Docket Entry 2 at 2, with Docket Entry 13 at 1, and Docket Entry 14 at 1), but the

---

1(...continued)
opening brief or by failing to develop its argument — even if its brief takes a passing shot at the issue." (brackets and internal quotation marks omitted)).

2

United States Postal Service returned those mailings to the Court with the message "Return to Sender Insufficient Address Unable to Forward" (Docket Entry 13 at 1 (all-caps font omitted); Docket Entry 14 at 1 (all-caps font omitted)). Counsel for Defendant, however, succeeded in reaching Plaintiff by telephone and they "conferred on October 26, 2023" (Docket Entry 15 at 1; accord Docket Entry 16 at 1), at which time they failed to "agree[ about] all of the proposed [Scheduling Order] deadlines" (Docket Entry 15 at 1). Defendant then filed an individual report proposing Scheduling Order deadlines. (See id. at 1-3.)

Plaintiff and Defendant's counsel thereafter appeared at the Initial Pretrial Conference (the "IPC"). (See Minute Entry dated Oct. 31, 2023.)[2] At the beginning of the IPC, Plaintiff (A) explained that she lacked a reliable mailing address, (B) commented that, in connection with prior litigation in this Court, she had received service of court filings by e-mail, and (C) confirmed that she possessed both internet access and an e-mail address suitable for electronic service. As a result, the undersigned Magistrate Judge provided Plaintiff with a form to consent to e-mail service in this case, which she executed (see Docket Entry 17 at 1). In doing so, Plaintiff committed to "promptly notify the Court in writing if there [wa]s a change in

_____

2 The Clerk's Office made and maintains an audio recording of the IPC, which the undersigned Magistrate Judge reviewed and used to prepare this Recommendation.

3

[her] personal data, such as [her] . . . telephone number and/or e-mail address" (id.) and "to promptly notify the Court in writing of [any] request to cancel this electronic service" (id.).[3]

Early in the IPC, Plaintiff also orally moved for a 90-day delay in the adoption of a Scheduling Order to allow her an opportunity to locate counsel, which the Court (per the undersigned Magistrate Judge) "grant[ed] in part . . . [by] delay[ing the] commencement of discovery for 30 days and [] extend[ing] all other [S]cheduling [O]rder dates [proposed by Defendant] accordingly." (First Text Order dated Oct. 31, 2023.)[4] Consistent with that ruling, the Court (per the undersigned Magistrate Judge) "adopt[ed Defendant's Scheduling Order proposal], with the following [pertinent] modifications, as stated on the record at the [IPC], after hearing from both parties" (Third Text Order dated Oct. 31, 2023 (the "Scheduling Order")):

---

3 During the IPC, the undersigned Magistrate Judge similarly cautioned Plaintiff to keep the Court informed about any changes in her preferred means of service. Moreover, Plaintiff expressly stated that she did not want anything mailed to her and that service by e-mail would ensure that she did not miss any deadlines.

4 As articulated at the IPC, the undersigned Magistrate Judge declined to delay the discovery commencement date any further because Plaintiff could not provide any concrete basis to believe that she would/could secure counsel. The undersigned Magistrate Judge additionally emphasized that the Court bore an independent obligation to bring this case to a timely resolution and that (to that end) the Clerk would set the trial date based on the discovery deadline adopted in the Scheduling Order. Finally, the undersigned Magistrate Judge provided Plaintiff with a copy of the SPO.

(1) discovery shall commence on 11/29/2023; (2) the parties shall serve initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) by 01/02/2024; (3) the parties shall complete discovery by 05/30/2024; . . . (6) in lieu of private mediation, the parties shall appear for a judicially-hosted settlement conference at 10:30 a.m. on 05/28/2024 in Courtroom 1A of the L. Richardson Preyer United States Courthouse in Greensboro, North Carolina; . . . (9) the Clerk shall set the trial date and all related final pretrial filing deadlines based on the standard considerations (which do not include any guaranteed period between any ruling on any dispositive motion and the trial date); and (10) the parties shall file any dispositive motions by 07/01/2024.

(Id.; see also Docket Entry 18 at 1 (noticing settlement conference for 10:30 a.m. on May 28, 2024, in Courtroom 1A of the L. Richardson Preyer United States Courthouse in Greensboro); Docket Entry 19 at 1 (noticing trial for November 4, 2024); Text Order dated Aug. 12, 2024 (advancing trial date to October 30, 2024).)

On April 12, 2024, Defendant "move[d] the Court, pursuant to Local Rule 37.1(b)[,] to set a 30-minute teleconference before the [undersigned] Magistrate Judge to resolve a discovery dispute between the parties." (Docket Entry 20 (the "Discovery Motion") at 1; see also id. at 4 ("Plaintiff agreed to setting a teleconference with the [undersigned] Magistrate Judge." (citing Docket Entry 20-11)); Docket Entry 20-11 at 2 (stating, in e-mail from Defendant's counsel to Plaintiff dated April 4, 2024, that Defendant "would like to set up a teleconference with the Magistrate Judge pursuant to Local Rule 37.1(b)" and asking if Plaintiff "[w]ould [] agree to setting up a 30 minute conference with the Magistrate Judge to resolve the discovery dispute"), 3 (documenting Plaintiff's

5

response, via e-mail dated April 7, 2024, relaying her "open[ness] to setting up a 30 minute meeting with the judge").)[5]  The Discovery Motion "specifically request[s] that[, at the teleconference, the Court direct] Plaintiff (1) [to] respond to [Defendant's F]irst [S]et of [I]nterrogatories . . .; [] (2) [to] provide complete responses to Defendant's [First Set of] Requests for Production; [and] (3) [to] produce any documents that she intends to rely on to support her claims in this case . . . ." (Docket Entry 20 at 5; see also id. ("Defendant also requests that the Court find that Plaintiff has waived any objections to Defendant's First [Set of] Interrogatories due to her failure to timely respond.  Defendant further requests that the Court advise Plaintiff that if she continues to fail to engage in discovery that her case may be dismissed." (internal paragraph number omitted)).)

As support for the Discovery Motion, Defendant recited (and attached documentation showing) that:

1) "[o]n December 19, 2023, Defendant served [its] First [Sets of] Interrogatories and Requests for Production on Plaintiff" (id. at 1; see also Docket Entry 20-1 at 2 (showing attachment of First Set of Requests for Production and First Set of Interrogatories to e-mail dated December 19, 2023, from Defendant's counsel to

_____

    5 Pin cites to the above-referenced document containing the e-mail correspondence between Defendant's counsel and Plaintiff (and to other documents attached to the Discovery Motion) refer to the page numbers in the footer appended to said documents upon their docketing in the CM/ECF system (not to any original pagination).

Plaintiff), 3-15 (First Set of Requests for Production), 16-24 (First Set of Interrogatories), 25 (setting forth Plaintiff's response e-mail dated December 19, 2023, instructing Defendant to "only send correspondence via email"));[6]

2) "[o]n December 24, 2023, Plaintiff requested an extension to respond to written discovery which Defendant granted through February 1, 2024" (Docket Entry 20 at 2; <u>see also</u> Docket Entry 20-2 at 2 (complaining, in e-mail from Plaintiff to Defendant's counsel dated December 24, 2023, that "[i]ts [sic] Christmas" and asking "[m]ight there be an extension?"), 5 (responding, in e-mail from Defendant's counsel to Plaintiff dated January 2, 2024, that "Defendant ha[d] granted [Plaintiff's] request for extension in which to respond to discovery until February 1, 2024"));

3) after Plaintiff e-mailed again "indicat[ing] the task of responding was proving difficult" (Docket Entry 20 at 2; <u>see also</u> Docket Entry 20-2 at 4 (stating, in e-mail from Plaintiff to Defendant's counsel dated January 27, 2024, that Plaintiff "appreciate[d] the additional time extended in consideration of the

---

6 "Plaintiff's responses were originally due to Defendant on January 18, 2024." (Docket Entry 20 at 2; <u>see also</u> Docket Entry 20-1 at 3 ("request[ing] that Plaintiff . . . respond and furnish genuine and complete copies of the [requested] documents and materials to Defendant by U.S. Mail within thirty (30) days from the date of service of the[ production] requests under Rule 34(b)(2)(A)"), 16 ("request[ing] that Plaintiff . . . answer [Defendant's] interrogatories . . . and send responses to Defendant via U.S. Mail within thirty (30) days from the date of service of the[ interrogatories] as required under Rule 33(b)(2)").)

holidays, but it is still proving very difficult to tackle this task")), "Defendant granted Plaintiff another extension to respond to written discovery until February 9, 2024" (Docket Entry 20 at 2; <u>see also</u> Docket Entry 20-2 at 6 (conveying, in e-mail from Defendant's counsel to Plaintiff dated January 30, 2024, Defendant's "willing[ness] to grant [Plaintiff] a week extension to respond to [its] discovery requests through February 9"));

4) "[o]n February 9, 2024, Plaintiff requested an extension to respond until February 12, 2024" (Docket Entry 20 at 2; <u>see also</u> Docket Entry 20-3 at 2 (claiming, in e-mail from Plaintiff to Defendant's counsel dated February 9, 2024, that Plaintiff "did find assistance to help prepare the interrogatories," before "ask[ing] for an extension until Monday[, February 12, 2024,] to prepare the documentation in greater detail")), "which Defendant granted" (Docket Entry 20 at 2; <u>see also</u> Docket Entry 20-3 at 6 (replying same day: "That is fine"));

5) "[o]n February 13, 2024, Plaintiff emailed to notify [Defendant's] counsel that [Plaintiff's responses to the] interrogatories were almost complete, and the physical copies of her medical records would be placed in the mail the following day" (Docket Entry 20 at 2; <u>see also</u> Docket Entry 20-3 at 4 (advising, in e-mail from Plaintiff to Defendant's counsel dated February 13, 2024, that "interrogatories are just about completed" and that

"[p]hysical copies of latest medical records will be placed in the mail on tomorrow"));

6) "[o]n February 14, 2024, Plaintiff emailed to notify [Defendant's] counsel that [Plaintiff's] documents would not be ready until the following week" (Docket Entry 20 at 2; <u>see also</u> Docket Entry 20-3 at 5 (explaining, in e-mail from Plaintiff to Defendant's counsel dated February 14, 2024, that Plaintiff "came to pick up [her] documents to mail in and was told that they are not ready" and would not become available until "next week"));

7) in turn, "Defendant gave [Plaintiff] an extension through February 16, 2024, to respond to written discovery" (Docket Entry 20 at 2; <u>see also</u> Docket Entry 20-3 at 5 (volunteering, in e-mail from Defendant's counsel to Plaintiff, that Defendant "grant[ed Plaintiff] an extension to respond to [its] discovery requests through Friday[,] February 16, as [Defendant] need[ed] to move forward in discovery"));

8) "[o]n February 20, 2024, Plaintiff provided Defendant with partial responses to Defendant's First [Set of] Requests for Production but did not provide any documents to accompany her incomplete responses" (Docket Entry 20 at 2; <u>see also</u> Docket Entry 20-4 at 2-4 (asserting, in e-mail from Plaintiff to Defendant's counsel dated February 20, 2024, that "medical records will be sent as soon as received" and then appearing to narratively respond to first ten production requests, primarily by offering excuses for

9

her inability to produce documents and electronic communications),
5 (clarifying, in e-mail from Plaintiff to Defendant's counsel
dated February 22, 2024, that "responses that indicated emails have
been sent are in regard to the emails that [Defendant's counsel]
already has that were accumulated from the Labor Department," which
Plaintiff "assume[d] he should still have [] on hand"));

9) "[o]n February 28, 2024, Defendant served a deficiency
letter on Plaintiff, requesting that she provide full and complete
responses to Defendant's First [Sets of] Interrogatories and
Requests for Production by March 15, 2024" (Docket Entry 20 at 3;
see also Docket Entry 20-5 at 2 (notifying Plaintiff in letter e-
mailed to her by Defendant's counsel on February 28, 2024, that
Defendant "received partial responses to the [First Set of]
Requests for Production on February 20, 2024, but [] did not
receive any responses to [the First Set of] Interrogatories, nor
did [Defendant] receive any documents from [Plaintiff]"));

10) "[o]n March 3, 2024, Plaintiff replied that she did not
receive requests for production" (Docket Entry 20 at 3; see also
Docket Entry 20-5 at 3 (declaring, in e-mail from Plaintiff to
Defendant's counsel dated March 3, 2024, that "[Plaintiff] did not
receive requests for productions [sic]" and asking "What is this/
how is it different from interrogatories?"));

11) "Defendant replied to Plaintiff on March 6, 2024, to
notify her that it had in fact served on her Defendant's First

[Sets of] Interrogatories and Requests for Production on December 19, 2023, to [the latter of] which Plaintiff only provided partial and incomplete responses" (Docket Entry 20 at 3; see also id. ("[T]he partial responses that Plaintiff provided on February 20 were to Defendant's requests for production." (stray comma omitted)); Docket Entry 20-6 at 2-3 (reminding Plaintiff, in e-mail dated March 6, 2024, that "[Defendant] served both interrogatories and requests for production to [her] on December 19, 2023," and "direct[ing her] to . . . Rules 33 and 34 for additional information" via "a link to th[ose] rules"));

12) "Plaintiff replied that she did not recall discussing requests for production and believed answering [them] to be redundant" (Docket Entry 20 at 3; see also Docket Entry 20-6 at 2 (indicating, in e-mail from Plaintiff to Defendant's counsel dated March 6, 2024, that "[Plaintiff] only remember[ed] discussing the situation of interrogatories" and not "productions," as well as that production requests "look[ed] to be redundant to answering or sending documentation based on the interrogatories"));

13) "[p]ursuant to Local Rule 37.1(a), and to resolve the discovery dispute before [seeking] Court intervention, on March 6, 2024, Defendant asked to schedule a call with Plaintiff" (Docket Entry 20 at 3; see also Docket Entry 20-6 at 2 (asking, in e-mail from Defendant's counsel to Plaintiff dated March 6, 2024, about

11

Plaintiff's "availab[ility] for a call this week or early next week to discuss [interrogatories and production requests]"));

14) "[o]n March 13, 2024, [Defendant's counsel] and Plaintiff conferred via Zoom" (Docket Entry 20 at 3) and "Defendant granted Plaintiff another extension to respond until March 22, 2024" (id. (emphasis omitted); see also Docket Entry 20-7 at 3 ("[t]hank[ing Plaintiff]," in e-mail from Defendant's counsel dated March 13, 2024, "for taking [Defendant's counsel's] call [that ]day," while also reiterating Defendant's agreement to "give [Plaintiff] another extension to respond to [its] interrogatories and requests for production through March 22, 2024" and to "send [Plaintiff] a [website] link so [she] can send over documentation securely"));

15) "[o]n March 17, 2024, Plaintiff emailed [Defendant's] counsel that [Plaintiff] preferred to send her responses via mail[ and] that she was working through the requests" (Docket Entry 20 at 3-4; see also Docket Entry 20-7 at 2 ("assur[ing Defendant's counsel in e-mail dated March 17, 2024,] that [Plaintiff was] working on [Defendant's interrogatories and document requests] the best that [she] can" and that she "prefer[red] to send the information via mail"));

16) "[o]n March 22, 2024, Plaintiff emailed Defendant to request an additional extension through March 29, 2024" (Docket Entry 20 at 4; see also Docket Entry 20-8 at 2 (requesting, in e-mail from Plaintiff to Defendant's counsel dated March 22, 2024,

12

"extension of just one more week, until Friday, March 29th at 11:59pm" because Plaintiff "need[ed] more time to sort through the complete [sic] the compilation of medical records and finalize some of these questions/productions" and "[she] was sick most of th[e preceding] week and [her] therapy didn't work out," which "took away from [her] work time and mental space to complete them"));

17) "Defendant granted Plaintiff's request for an extension to respond until March 29, 2024, but notified her that it intended to file a motion to compel with the Court in the event Defendant did not receive a response" (Docket Entry 20 at 4; see also Docket Entry 20-8 at 3 (advising Plaintiff, in e-mail from Defendant's counsel dated March 25, 2024, that Defendant "g[a]ve [Plaintiff] the week extension through Friday March 29th to respond," but that, "if [Defendant] d[id] not receive responses, [it] intend[ed] to file a motion to compel with the Court"));

18) "[o]n March 26, 2024, Plaintiff emailed Defendant indicating that [Plaintiff] could not prepare her responses during th[at] week because she was observing lent and was required to abstain from using electronic devices" (Docket Entry 20 at 4; see also Docket Entry 20-9 at 2 (reproducing this e-mail communication from Plaintiff to Defendant's counsel sent on March 26, 2024: "[W]hen I wrote you the email [on March 22, 2024], I was unaware of the my [sic] obligations for Holy Week. I am sure you know this is the week from Palm Sunday until Easter Sunday. Church places us on

13

fasts this week.  During lent, we are to abstain from meat, sweets, electronic devices and anything that takes our focus off of God and commerating [sic] the journey Jesus endured during the Holy Week. It is a time of self-reflection in which we give our undivided attention to He who has given all to us.  What shall we do in return?  As such, I am not comfortable working on this material as it would place the importance of it above fasting, prayer and drawing closer to God.  Without Him, none of this matters.  I hope you understand this.")); 

19) "Defendant granted Plaintiff another extension to respond until April 3, 2024" (Docket Entry 20 at 4 (emphasis omitted); see also Docket Entry 20-9 at 3 (agreeing, in e-mail from Defendant's counsel to Plaintiff dated March 28, 2024, to "grant [Plaintiff] an extension to respond through April 3rd")); and 

20) "Defendant did not receive any responses or documentation from Plaintiff on April 3, 2024" (Docket Entry 20 at 4), as Plaintiff instead reported via e-mail to Defendant's counsel that day "that [Plaintiff wa]s unable to respond to the requests [for production and interrogatories] and [wa]s 'not sure an extension of time will make a difference'" (id. (quoting Docket Entry 20-10 at 2); see also Docket Entry 20-10 at 2 ("I am sitting here crying inside trying to push myself to answer these questions, but I just can't.  I am physically and emotionally depleted and its [sic] as if my mind is fighting against me and refuses.")).

14

Shortly after Defendant filed the Discovery Motion, the undersigned Magistrate Judge "set[ a] telephone hearing on [the Discovery] Motion, at 10:30 a.m. on 04/23/2024." (Text Order dated Apr. 15, 2024.) In addition to e-mail service of that Text Order which Plaintiff received (per her previously noted written consent), "[c]all-in information for [that] hearing . . . [was] provided to Plaintiff . . . via e-mail." (Docket Entry dated Apr. 19, 2024; see also First Docket Entry dated Apr. 23, 2024 (documenting Clerk's Office's "[a]ttempt[s] to contact [P]laintiff twice on 4/22/2024 regarding [the] telephone conference").) Nevertheless, "Plaintiff failed to appear despite proper notice and thereby waived her right to be heard about the matters addressed in [the Discovery] Motion." (Text Order dated Apr. 23, 2024; see also Minute Entry dated Apr. 23, 2024 ("Telephone Conference held on 4/23/2024. Plaintiff not present.").)[7]

The undersigned Magistrate Judge proceeded with the telephone hearing and "grant[ed the Discovery] Motion . . . for reasons stated on the record at the telephone hearing . . . ." (Text Order dated Apr. 23, 2024.) As memorialized in writing later that day, the undersigned Magistrate Judge ruled as follows:

> [T]he record [] establishes that Plaintiff failed to comply with her obligations under [Rules] 26(a)(1)(A)(ii), 33(b), and 34(b)(2). Accordingly,

---

7 The Clerk's Office made and maintains an audio-recording of that telephone hearing, which the undersigned Magistrate Judge reviewed and used to prepare this Recommendation.

> Defendant is entitled to relief under [Rule] 37(a)(3)(A)
> and (B)(iii) and (iv). In addition, the record
> establishes that Defendant is entitled to
> expense-shifting under [Rule] 37(a)(5)(A). On or before
> 05/03/2024, Plaintiff shall serve Defendant with:
> (1) complete responses (without objection) to []
> Defendant's First Set of Requests for Production and
> Defendant's First Set of Interrogatories; (2) all
> documents and materials responsive to [] Defendant's
> First Set of Requests for Production; and (3) all
> documents Plaintiff intends to rely upon to support her
> claim(s) in this case.

(Id.; see also id. (establishing procedure for determination of
amount of Defendant's reasonable expenses Plaintiff must pay).)
That Text Order (served upon Plaintiff by e-mail pursuant to her
written consent to such service) further explicitly warned
Plaintiff that "[f]ailure by [her] to timely and fully comply with
those [above-quoted] directives shall result in the dismissal of
this case with prejudice." (Id. (emphasis added).)

On May 3, 2024, Defendant timely "submit[ted ] its Itemized
Statement of Attorneys' Fees" (Docket Entry 21 at 5 (referencing
Docket Entry 21-2)) and "request[ed] [that] the total cost of
$2,333 [] be paid by Plaintiff" (id. at 6). Although the
undersigned Magistrate Judge had directed "Plaintiff [to] file
. . . a response of no more than three pages addressing the
reasonableness of the amount of expenses claimed by Defendant"
(Text Order dated Apr. 23, 2024 (emphasis added)), Plaintiff
instead made a filing "request[ing] that the [C]ourt reconsider the
ruling . . . granting [Defendant's] request to shift attorneys'
expenses . . . ." (Docket Entry 22 at 1.) To support that request

16

– which Plaintiff did not properly make via motion, <u>see</u> Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."), with a supporting brief, <u>see</u> M.D.N.C. L.R. 7.3(a) ("All motions, unless made during a hearing or at trial, shall be . . . accompanied by a brief except as provided in section (j) of [Local Rule 7.3]."); <u>see also</u> M.D.N.C. LR 7.3(j) (omitting motions for reconsideration from list of motions exempt from brief requirement) – Plaintiff made a number of assertions unsupported by the record (<u>see</u> Docket Entry 22 at 1-3).

Of potential pertinence to the instant Motion, Plaintiff's foregoing filing asserts that "[she] did not have a fair chance to attend [the] teleconference" (Docket Entry 22 at 1), because (A) "[it] was scheduled and held <u>within 5 days</u>" (<u>id.</u> (emphasis added)), (B) "[she] did not have access to a fully functioning phone and was expecting videotelephony" (<u>id.</u>), and (C) "due to medial [sic] reasons" (<u>id.</u> at 2). In fact, the undersigned Magistrate Judge scheduled (and Plaintiff received e-mail notice of) the telephone hearing on April 15, 2024, i.e., <u>eight days</u> before the telephone hearing took place (as scheduled) on April 23, 2024. (<u>Compare</u> Text Order dated Apr. 15, 2024 ("setting a telephone hearing on [the Discovery] Motion, at 10:30 a.m. on 04/23/2024"), <u>with</u> Minute Entry dated Apr. 23, 2024 ("Telephone Conference held on 4/23/2024."), <u>and</u> Text Order dated Apr. 23, 2024 ("granting [the Discovery] Motion in the manner and for the reasons

17

stated on the record at the telephone hearing held this day").)
And that eight-day period – between (A) the date the Court set the
hearing date and (B) the hearing date – exceeds the Local Rules'
default, seven-day, minimum-notice period.  See M.D.N.C. LR
7.3(c)(2) ("The clerk shall give at least seven days' notice of the
date and place of oral argument.  The Court, however, for good
cause shown may shorten the seven-day notice period.").

Nor could Plaintiff plausibly have "expect[ed] videotelephony"
(Docket Entry 22 at 1), as the Text Order served on her by e-mail
(per her written election) "set[] a telephone hearing" (Text Order
dated Apr. 15, 2024 (emphasis added)) and she received "[c]all-in
[i]nformation for [that] hearing . . . via e-mail" (Docket Entry
dated Apr. 19, 2024 (emphasis added)).  If Plaintiff "did not have
access to a fully functioning phone" (Docket Entry 22 at 1), as she
"assert[ed] unsupported by citation to specific evidence in the
record" (Docket Entry 7 at 1), contrary to the SPO (see id.), she
immediately should have raised that issue, such as by (A) replying
to the e-mail from the Clerk's Office with the call-in instructions
or (B) e-mailing Defendant's counsel (as she consistently had done
during the discovery period).[8]   Plaintiff likewise did not

_____

8 Similarly, to the extent Plaintiff has complained that she
"had limited internet access" (Docket Entry 22 at 2; see also
Docket Entry 23 at 2 ("Plaintiff is without consistent resources
such as technology of internet . . . .")), she bore the burden to
"promptly notify the Court in writing of [any] request to cancel
[her consent to] electronic service" (Docket Entry 17 at 1).

establish that she "missed [the telephone] conference due to medial [sic] reasons" (Docket Entry 22 at 2). (See id. (appearing to base that unverified allegation on fact that "Plaintiff communicated with opposing counsel [that Plaintiff] was struggling emotionally to get through [the] interrogatories," that "Plaintiff told opposing counsel [that Plaintiff] was in search of a therapist to assist with mental/emotional block preventing completion of requested document[ production]," and that "[o]pposing counsel knew Plaintiff was struggling with other devastating situation"); see also Docket Entry 23 (the "Reconsideration Motion") at 1 (expressing Plaintiff's "belie[f that] if [she had] received notification [she] could have taken steps to insure [her] presence at [the telephone] conference").)[9]

---

    9 On May 10, 2023, the same day Plaintiff made her above-discussed filing opposing expense-shifting as to the Discovery Motion, she also filed the Reconsideration Motion, seeking "to have the dismissal of [her] case reconsidered . . . ." (Docket Entry 23 at 1.) The undersigned Magistrate Judge terminated the Reconsideration Motion as moot "[b]ecause the Court had not at that point (and has not to this point) dismissed this case . . . ." (Text Order dated Aug. 8, 2024.) The Reconsideration Motion nonetheless merits mention here for two reasons. First, it does not represent that Plaintiff complied (even belatedly) with the directives in the Text Order dated April 23, 2024. (See Docket Entry 23 at 1-2.) Second, although the Reconsideration Motion makes the broad proclamation that "Plaintiff was not aware of the time and day of the [telephone hearing on the Discovery Motion] until the day after it occurred" (Docket Entry 23 at 1), evidently based on the unsubstantiated contentions that she "suffer[s] from [a] medical condition both caused and induced by [her] initial claims [against Defendant] and was seeking assistance to proceed" (id.; see also id. at 1-2 (citing no evidence of any such medical condition or pursuit of assistance much less any evidence
(continued...)

19

Subsequently, on May 22, 2024, Defendant filed the instant Motion (see Docket Entry 24 at 2), accompanied by a Memorandum (Docket Entry 25) and exhibits (Docket Entry 25-1). The instant Motion seeks dismissal of this action on two grounds: (1) "because [Plaintiff] failed to comply with the Court's [Text] Order dated April 23, 2024, ordering [her] to respond to [Defendant's] written discovery by May 3, 2024" (Docket Entry 24 at 1); and (2) "Plaintiff has further failed to engage in discovery as she did not appear for her scheduled deposition on May 16[, 2024]" (id. at 2; see also Docket Entry 25-1 at 4 (reflecting Plaintiff's confirmation, via reply e-mail to Defendant's counsel dated April 24, 2024, of her availability to appear for her deposition at Defendant's counsel's office at 10 a.m. on May 16, 2024), 7-9 (Notice of Deposition served on Plaintiff by e-mail on April 30, 2024, setting her deposition for 10 a.m. on May 16, 2024, at Defendant's counsel's office), 14-19 (transcript of Plaintiff's deposition documenting her failure to appear as noticed)).[10]

---

9(...continued)
establishing that any medical condition or pursuit of assistance prevented Plaintiff from receiving properly served electronic notice of telephone hearing)), pursuant to the SPO, those "factual assertions unsupported by citation to specific evidence in the record will be disregarded" (Docket Entry 7 at 1).

10 Pin cites to the above-referenced document (containing the exhibits supporting the instant Motion) refer to the page numbers in the footer appended to said document upon its docketing in the CM/ECF system (not to any original pagination).

20

The day after the filing of the instant Motion, the Clerk's Office docketed a notice advising Plaintiff of her "right to file a 20-page response in opposition to [the instant M]otion" (Docket Entry 27 at 1), which she could support with "affidavits[] or . . . other responsive material" (id.). That notice warned Plaintiff that any "failure to respond or, if appropriate, to file counter affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that [the instant Motion's] contentions are undisputed. As a result, the [C]ourt may dismiss [this] suit . . . ." (Id.; see also id. ("Any response or counter affidavits or other responsive material . . . must be filed within 21 days from the date of service of the [instant M]otion upon you.").) Within 21 days of the filing (and electronic service of) the instant Motion, Plaintiff filed both "Plaintiff's Opposition to Defendant's Motion to Dismiss" (Docket Entry 33 at 1 (all-caps font omitted)) and "Plaintiff's Opposition Defendant's Motion to Reconsider Dismissal" (Docket Entry 34 at 1).

Finally, in conjunction with the instant Motion, Defendant filed a Motion to Amend Scheduling Order (Docket Entry 26), requesting, inter alia, postponement of the "settlement conference . . . scheduled with the Court on May 28, 2024" (id. at 1), because "settlement discussions [we]re unlikely to be productive with the [instant M]otion [still] pending" (id. at 2). The Court (per the undersigned Magistrate Judge) promptly "den[ied the] Motion to

21

Amend Scheduling Order" (Text Order dated May 23, 2024), "deem[ing] the interests of justice better served by proceeding with the settlement conference as long-scheduled, notwithstanding Defendant's skepticism about the prospects for settlement" (id.). The undersigned Magistrate Judge thereafter convened the settlement conference (as long-scheduled) on May 28, 2024, at which time "Plaintiff failed to appear." (Minute Entry dated May 28, 2024.)[11] Defendant appeared at the settlement conference through its counsel, as well as a corporate representative (see id.), and made an "[o]ral [m]otion . . . for [e]xpenses incurred for attending" (id.). That same day, the undersigned Magistrate Judge:

> (A) requir[ed] Defendant . . . to file a notice of the reasonable expenses, including attorney's fees, it incurred in connection with the settlement conference . . . .; and (B) requir[ed] Plaintiff . . . to file any objections to expense-shifting or to the amount of the reasonable expenses claimed by Defendant in its notice.

(Text Order dated May 28, 2024; see also id. ("Plaintiff failed to appear at the settlement conference . . . ., despite proper notice, thus entitling Defendant to payment by Plaintiff of Defendant's reasonable expenses, including attorney's fees, incurred in connection with the settlement conference 'unless the noncompliance . . . was substantially justified or other circumstances make an award of expenses unjust,' Fed. R. Civ. P. 16(f)(2).").)

---

11 The Clerk's Office made and maintains an audio-recording of the settlement conference, which the undersigned Magistrate Judge reviewed and used to prepare this Recommendation.

Defendant gave timely notice of its reasonable expenses incurred for the settlement conference. (See Docket Entries 29, 30, 30-1.)  Plaintiff, in turn, filed a document entitled "Response Contesting Defendant's Expense Shifting" (Docket Entry 32 at 1 (all-caps font omitted)); however, that filing does not address the settlement conference on May 28, 2024, but instead repeats (verbatim) Plaintiff's prior "request that the [C]ourt reconsider the ruling made on Tuesday, April 23, 2024, granting [Defendant's] request to shift attorneys' expenses [as to the Discovery Motion]" (id. at 1 (emphasis added); see also, e.g., id. ("Plaintiff did not have a fair chance to attend teleconference.  The phone conference was scheduled and held within 5 days of one another. . . . Plaintiff did not have access to a fully functioning phone and was expecting videotelephony." (internal lettered formatting omitted)); compare id. at 1-3, with Docket Entry 22 at 1-3).

DISCUSSION

"[P]ursuant to Rule 41(b) and Rule 37(b)(2)(A)(v) . . .[, Defendant has] move[d] this Court for dismissal of Plaintiff's Complaint with prejudice." (Docket Entry 24 at 1.)  The first of those cited provisions states that, "[i]f the plaintiff fails . . . to comply with the[ R]ules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  To determine whether any such noncompliance warrants dismissal under Rule 41(b), the Court evaluates "(i) the degree of

23

personal responsibility of the plaintiff; (ii) the amount of prejudice caused the defendant; (iii) the existence of a history of deliberately proceeding in a dilatory fashion[;] and (iv) the existence of a sanction less drastic than dismissal." Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989).

Coordinately, under Rule 37, the Court may dismiss an action as a sanction for a plaintiff's failure (A) to obey a discovery order, see Fed. R. Civ. P. 37(b)(2)(A)(v) ("If a party . . . fails to obey an order to provide or permit discovery . . ., the court where the action is pending may issue further just orders. They may include . . . dismissing the action or proceeding in whole or in part[.]"); (B) to attend her deposition, see Fed. R. Civ. P. 37(d)(1)(A)(i) & (3) (authorizing imposition of sanctions permitted under Rule 37(b)(2)(A)(i)-(vi) for parties who fail to attend their depositions); or (C) to respond to interrogatories or requests for production of documents, see Fed. R. Civ. P. 37(d)(1)(A)(ii) & (3) (authorizing imposition of sanctions permitted under Rule 37(b)(2)(A)(i)-(vi) for parties who fail to respond to interrogatories or production requests). In evaluating whether to impose dispositive sanctions pursuant to the provisions of Rule 37, the Court considers "([i]) whether the noncomplying party acted in bad faith; ([ii]) the amount of prejudice h[er] noncompliance caused h[er] adversary[] . . .; ([iii]) the need for deterrence of the particular sort of noncompliance; and ([iv]) the effectiveness

24

of less drastic sanctions." Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989).

As the quotations above show, "[t]he legal standard for dismissals under Rule 37 is virtually the same as that for dismissals . . . under Rule 41." Carter v. University of W. Va. Sys., Bd. of Trs., No. 93-1905, 23 F.3d 400 (table), 1994 WL 192031, at *2 (4th Cir. 1994) (unpublished). Hence, "courts in this Circuit often combine the analysis of the question [of] whether dismissal is appropriate under Rules 37 and 41." Stewart v. VCU Health Sys. Auth., No. 3:09CV738, 2011 WL 7281603, at *5 n.9 (E.D. Va. Nov. 22, 2011) (unpublished) (internal brackets and quotation marks omitted), recommendation adopted, 2012 WL 463561 (E.D. Va. Feb. 13, 2012) (unpublished), aff'd, 478 F. App'x 757 (4th Cir. 2012); accord, e.g., Williams v. PUMA N. Am., Inc., Civ. No. 19-3340, 2020 WL 6684901, at *2 (D. Md. Nov. 12, 2020) (unpublished) (citing Taylor v. Fresh Fields Mkts., Inc., No. CIV. A. 94-55-C, 1996 WL 403787, at *2 (W.D. Va. June 27, 1996) (unpublished), aff'd, No. 96-2042, 112 F.3d 510 (table), 1997 WL 226372 (4th Cir. May 7, 1997) (unpublished)). In carrying out that analysis, the Court should remain mindful that "dismissal is not a sanction to be invoked lightly," Ballard, 882 F.2d at 95; nevertheless, dismissal "'must be available . . . in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to

25

such conduct in the absence of such a deterrent,'" <u>Davis v. Williams</u>, 588 F.2d 69, 71 (4th Cir. 1978) (quoting <u>National Hockey League v. Metropolitan Hockey Club, Inc.</u>, 427 U.S. 639, 643 (1976)).  Furthermore, when a party's noncompliance follows a warning from the Court that such conduct risks dismissal, the Court will "ha[ve] little alternative to dismissal," <u>Ballard</u>, 882 F.2d at 96, as "[a]ny other course would . . . place[] the credibility of the [C]ourt in doubt and invite[] abuse," <u>id.</u>

Starting with the threshold question of whether "[P]laintiff fail[ed] . . . to comply with the[ R]ules or a court order," Fed. R. Civ. P. 41(b), the record establishes (and Plaintiff has not disputed) that she did, in fact, "fail[] . . . to comply with the[ R]ules [and/]or a court order," <u>id.</u>  Most obviously, per the uncontested record material submitted with the instant Motion, Plaintiff "failed to appear for her deposition" (Docket Entry 25-1 at 18), after proper notice (<u>see id.</u> at 7-9), in contravention of the Rules, which provide for depositions of parties by such notice, <u>see</u> Fed. R. Civ. P. 30(a)(1) & (b)(1); <u>see also</u> <u>Buckner v. United Parcel Serv., Inc.</u>, No. 5:09CV411, 2011 WL 6748522, at *8 (E.D.N.C. Dec. 22, 2011) (unpublished) ("[The d]efendant may depose [the p]laintiff by right pursuant to Rule 30(a) . . . ."), <u>aff'd</u>, 489 F. App'x 709 (4th Cir. 2012).[12]  As a result, not only may the Court

---

12  Despite the instant Motion's express reliance on Plaintiff's failure to appear for her deposition as a basis for (continued...)

26

entertain Defendant's request for dismissal under Rule 41 for "[P]laintiff fail[ing] . . . to comply with the [ R]ules," Fed. R. Civ. P. 41(b), but "[t]he [C]ourt [also]. . . may, on [the instant M]otion, order sanctions . . . [under Rule 37 because Plaintiff] fail[ed], afer being served with proper notice, to appear for [her] deposition," Fed. R. Civ. P. 37(d)(1)(A)(i), and those "[s]anctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)," Fed. R. Civ. P. 37(d)(3), which list encompasses orders "dismissing the action," Fed. R. Civ. P. 37(b)(2)(A)(v).

Nor has Plaintiff contested the instant Motion's position that "she has failed to comply with the Court's [Text] Order dated April 23, 2024, ordering [her] to respond to [Defendant's] written discovery by May 3, 2024" (Docket Entry 24 at 1). (See Docket Entry 33 at 1-2; Docket Entry 34 at 1-3.) Rather, Plaintiff has admitted that she did not adhere to (A) the Rules' commands (i) that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath," Fed. R. Civ. P. 33(b)(3) (emphasis added), and (ii) that, "[f]or each item or category [requested], the response must either

---

12(...continued)
dismissal of this action (see Docket Entry 24 at 2), neither of her subsequent filings opposing dismissal meaningfully address her deposition (let alone dispute that she failed to appear at her deposition after proper notice) (see Docket Entry 33 at 1-2; Docket Entry 34 at 1-3; see also Docket Entry 34 at 3 (seeming to acknowledge Plaintiff's "absence on May 16" in cryptic handwritten addition to typewritten document without elaboration)).

27

state that inspection and [production] will be permitted as requested or state with specificity the grounds for objecting to the request," Fed. R. Civ. P. 34(b)(2)(B) (emphasis added), after which "production must then be <u>completed</u> no later than the time for inspection specified in the request or another reasonable time specified in the response," <u>id.</u> (emphasis added), and (B) the Court's directive that, "[o]n or before 05/03/2024, Plaintiff shall serve Defendant with (1) <u>complete</u> responses (without objection) to [] Defendant's First Set of Requests for Production and Defendant's First Set of Interrogatories; [and] (2) <u>all</u> documents and materials responsive to [] Defendant's First Set of Requests for Production" (Text Order dated Apr. 23, 2024 (emphasis added)). (<u>See</u> Docket Entry 34 at 3 (asserting only that "Plaintiff answered <u>some</u> interrogatories to best of [her] ability" (emphasis added)).)[13]

---

[13] Although Plaintiff described her incomplete discovery responses as made to "interrogatories" (Docket Entry 34 at 3), those incomplete discovery responses actually match up with Defendant's First Set of Requests for Production (not Defendant's First Set of Interrogatories). (<u>Compare, e.g.</u>, Docket Entry 20-1 at 4 (setting out first production request for "all documents and electronically stored information ('ESI') relating to the allegations in your Complaint, including but not limited to all e-mails, audio or visual recordings, . . . and other documents that you received, maintained, . . . or prepared that relate to your claims against [Defendant]"), <u>with</u> Docket Entry 20-4 at 3 (answering "Request #1" as follows: "All emails that I am able to find have been . . . sent. What I am not able to produce of [sic] are audio to [sic] calls made to HR to file complaints, correspondence sent via intranet as I was never given my password to access my account, [and] text messages between former supervising managers . . . ."); <u>see also</u> Docket Entry 20-1 at 17 (asking, as first interrogatory, for Plaintiff to "[i]dentify all
(continued...)

28

Accordingly, in addition to potential dismissal under Rule 41 for "fail[ing] . . . to comply with . . . a court order," Fed. R. Civ. P. 41(b), Plaintiff faces the prospect of dismissal under Rule 37 (A) for "fail[ing] to obey an order to provide or permit discovery," Fed. R. Civ. P. 37(b)(2)(A); <u>see also</u> Fed. R. Civ. P. 37(b)(2)(A)(v) (listing "dismissing the action" as among orders available for noncompliance with discovery order), and (B) for, "after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fail[ing] to serve [her] answers, objections, or written response," Fed. R. Civ. P. 37(d)(1)(A)(ii); <u>see also</u> Fed. R. Civ. P. 37(d)(3) ("Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).")).

Turning to the first of the factors that must guide the Court's decision-making about dismissal of this action as a sanction for Plaintiff's foregoing conduct, <u>see</u> <u>Ballard</u>, 882 F.2d at 95 (listing "degree of personal responsibility of the plaintiff" as first factor in dismissal analysis under Rule 41); <u>Mutual Fed.</u>, 872 F.2d at 92 (listing question of "whether the noncomplying party acted in bad faith" as first factor in dismissal analysis under Rule 37), the Court should note, "[a]s an initial matter, [that Plaintiff] proceeds pro se and thus 'is solely responsible for her

---

13(...continued)
persons known by you to have knowledge concerning any facts supporting or contesting the allegations in your Complaint and/or whom you believe may have relevant knowledge, information, or documents relating to this lawsuit").)

actions in this case,'" <u>Newman v. Durham Hous. Auth.</u>, No. 1:22CV242, 2023 WL 2477514, at *2 (M.D.N.C. Mar. 13, 2023) (unpublished) (Eagles, J.) (quoting <u>Rowley v. City of N. Myrtle Beach</u>, Civ. Action No. 4:06-1873, 2008 WL 4831422, at *4 (D.S.C. Oct. 31, 2008) (unpublished)); <u>see also</u> <u>Ballard</u>, 882 F.2d at 96 (emphasizing that "[p]ro se litigants" like "other litigants are subject to the time requirements and respect for court orders without which effective judicial administration would be impossible"). Further, as detailed above, contrary to the Rules, Plaintiff failed <u>both</u> to appear at her properly noticed deposition <u>and</u> to respond to written discovery (even after the Court ordered her to respond and warned her that noncompliance would result in dismissal), all of which together manifests bad faith. <u>See, e.g.</u>, <u>Pinkney v. Thigpen</u>, Civ. No. 12-2062, 2014 WL 4825884, at *3 (D. Md. Sept. 24, 2014) (unpublished) ("[R]egarding the first factor ([the p]laintiff's degree of personal responsibility or bad faith), . . . [the p]laintiff did not respond to [the d]efendants' discovery requests or justify her failure to respond, even after the court directed [her] to serve her discovery responses . . . . Her bad faith is further demonstrated by her failure to appear at her properly noticed deposition . . . . [Such] conduct . . . supports the conclusion that she acted in bad faith.").[14]

---

14 "[Plaintiff] has also demonstrated bad faith through repeated but unfulfilled assurances to [Defendant's] counsel that (continued...)

"The second factor concerns the amount of prejudice [Plaintiff's] noncompliance caused [Defendant]." Pinkney, 2014 WL 4825884, at *3; accord Ballard, 882 F.2d at 95; Mutual Fed., 872 F.2d at 92. "Considering that the purpose of pre-trial discovery

---

14(...continued)
she would provide discovery responses." Green v. John Chatillon & Sons, 188 F.R.D. 422, 424 (M.D.N.C. 1998), aff'd, No. 98-1556, 165 F.3d 18 (table), 1998 WL 736459 (4th Cir. Oct. 19, 1998) (unpublished). In that regard, after obtaining two extensions totaling more than three weeks to respond to Defendant's First Sets of Requests for Production and Interrogatories (see Docket Entry 20-2 at 5, 6), Plaintiff requested three more days because, although she "did find assistance to help prepare the interrogatories" (Docket Entry 20-3 at 2), she wanted "to prepare the documentation in greater detail" (id.). Defendant agreed to that additional delay (see id. at 6), but Plaintiff failed to respond by the new deadline and instead (a day after its passing) again promised Defendant that her responses to the "interrogatories [we]re just about completed" (id. at 4) and that, the next day, "[p]hysical copies of [her] latest medical records w[ould] be placed in the mail" (id.). Those promises too proved hollow (see Docket Entry 20-3 at 5), with Plaintiff delaying for another week before tendering incomplete responses to a handful of document requests and more vague promises to deliver documents at an unspecified future date (see Docket Entry 20-4 at 2-4). Later, when confronted by Defendant about her failure to produce documents and to answer interrogatories (see Docket Entry 20-5 at 4), Plaintiff falsely claimed that she "did not receive requests for productions [sic]" (id. at 5) and improperly dismissed them as "redundant" (Docket Entry 20-6 at 2). Following yet another extension (see Docket Entry 20-7 at 2-3), Plaintiff asked for an "extension of just one more week" (Docket Entry 20-8 at 2), so that she could "complete the compilation of medical records and finalize some of the[] questions/productions" (id.). Upon obtaining that extension (see id. at 3), Plaintiff announced that she would not meet that deadline due to her "obligations for Holy Week" (Docket Entry 20-9 at 2), which included "abstain[ing] from meat, sweets, electronic devices and anything that takes [her] focus off of God" (id.). Defendant allowed still more time for Plaintiff to comply (see id. at 3), but she missed that deadline as well, before finally admitting that she was "not sure an[other] extension of time will make a difference" (Docket Entry 20-10 at 2).

is for a litigating attorney to obtain information from the opposing party, . . . Defendant[] ha[s] suffered significant prejudice due to Plaintiff's refusal to respond to Defendant['s] discovery requests and her failure to appear at her properly noticed deposition." Pinkney, 2014 WL 4825884, at *3 (internal brackets and quotation marks omitted). As now-Chief Judge Eagles recently explained in an analogous situation:

> [Plaintiff's] repeated failures to participate in discovery, as required by the [] Rules, have prejudiced [ D]efendant [in multiple ways]. First, [ D]efendant bore the expenses associated with a worthless deposition and with filing the [instant M]otion. Second, a plaintiff's deposition is usually and is here an essential part of a case; [Plaintiff] has made serious claims of discrimination and seeks substantial damages, matters about which she will be an essential witness. A defendant cannot be expected to defend a case where the person bringing the action refuses to participate in the discovery process. [Plaintiff's] failure to provide responses to the written discovery has compounded this prejudice.

Newman, 2023 WL 2477514, at *2 (internal brackets, citations, and quotation marks omitted); see also id. at *3 (describing such forms of noncompliance as "unfair to a defendant trying to develop the information it needs to evaluate a case, determine if a dispositive motion is appropriate, and prepare for trial"); Lian v. Great New Evergreen Café Inc., Civ. No. 20-2596, 2021 WL 6339602, at *3 (D. Md. Sept. 16, 2021) (unpublished) ("It is difficult to conceive of any evidence more critical in defending a civil case than deposing [the p]laintiff[].").

"With regard to the third factor – Plaintiff's history of dilatoriness or noncompliance and the need to deter such behavior – the record is replete with [her] instances of noncompliance and lack of cooperation." Pinkney, 2014 WL 4825884, at *3; see also Ballard, 882 F.2d at 95 (listing "existence of a history of deliberately proceeding in a dilatory fashion" as third factor in dismissal analysis under Rule 41(b)); Mutual Fed., 872 F.2d at 92 (listing "need for deterrence of the particular sort of noncompliance" as third factor in dismissal analysis under Rule 37). "[Plaintiff] failed to appear for her deposition and did not respond to Defendant['s] discovery requests. Further, [Plaintiff] has chosen to ignore this [C]ourt's order directing her to respond to Defendant['s] discovery requests." Pinkney, 2014 WL 4825884, at *3.[15]  Indeed, as shown in the Introduction, "there is *only* a history of dilatory action by Plaintiff[] . . . ." Hanshaw v. Wells Fargo Bank, N.A., No. 2:11CV331, 2014 WL 4063828, at *4 (S.D. W. Va. Aug. 14, 2014) (unpublished) (emphasis in original).

---

[15] Additionally, since the filing of the instant Motion, Plaintiff failed to appear for the settlement conference, in defiance of two different court orders. (See Minute Entry dated May 28, 2024 ("Case called for [s]ettlement [c]onference held on 5/28/2024.  Plaintiff failed to appear."); see also Text Order dated May 23, 2024 ("deem[ing] the interests of justice better served by proceeding with the settlement conference as long-scheduled"); Text Order dated Oct. 31, 2023 ("[T]he parties shall appear for a judicially-hosted settlement conference at 10:30 a.m. on 05/28/2024 in Courtroom 1A of the L. Richardson Preyer United States Courthouse in Greensboro, North Carolina[.]").)

Moreover, "Plaintiff's noncompliance has disrupted the judicial process and must be deterred." Pinkney, 2014 WL 4825884, at *4; see also Lian, 2021 WL 6339602, at *3 (emphasizing "great need for the judiciary to enforce compliance with the [] Rules"); Williams, 2020 WL 6684901, at *4 ("[T]here is a need to deter [the plaintiff] and future litigants from defying the discovery rules . . . ."). "[D]istrict courts have crowded dockets and 'appropriate sanctions must be available to prevent their work from being impeded by the type of conduct disclosed by this record.'" Carter, 1994 WL 192031, at *3 (internal brackets omitted) (quoting Davis, 588 F.2d at 71); see also Newman, 2023 WL 2477514, at *3 ("The Court and the public have an interest in the prompt resolution of cases and the efficient use of court time, and [the plaintiff's] failures here have impeded those interests."); Williams, 2020 WL 6684901, at *4 ("[The plaintiff's] misconduct has also resulted in the [c]ourt having to expend resources . . . on this case. This is time that the [c]ourt was unable to spend on other cases where litigants have complied with the governing rules."). Simply put, "[Plaintiff's] noncompliance [with discovery by] stalling and ignoring the direct order[] of the [C]ourt . . . must obviously be deterred." Mutual Fed., 872 F.2d at 93.

"As for the fourth and final factor, i.e., the [availability and] effectiveness of lesser sanctions than dismissal, Plaintiff's unresponsiveness to date, despite good faith efforts by Defendant[]

34

and this [C]ourt's intervention, indicates a sanction lesser than dismissal would not be effective." Pinkney, 2014 WL 4825884, at *4 (italics omitted); see also Ballard, 882 F.2d at 95 (listing "existence of a sanction less drastic than dismissal" as fourth factor in dismissal analysis under Rule 41(b)); Mutual Fed., 872 F.2d at 92 (listing "effectiveness of less drastic sanctions" as fourth factor in dismissal analysis under Rule 37). "[Plaintiff] brought this case, then proceeded to ignore her discovery obligations even after she was warned that dismissal could result from her misconduct. 'Where a litigant has ignored an express warning that noncompliance . . . will result in dismissal, the district court should dismiss the case.'" Williams, 2020 WL 6684901, at *4 (emphasis added) (ellipsis in original) (quoting Pham v. Deutsche Bank Nat'l Trust Co., 583 F. App'x 216, 217 (4th Cir. 2014)); see also Ballard, 882 F.2d at 96 ("In view of the [dismissal] warning, the district court had little alternative to dismissal. Any other course would have placed the credibility of the [district] court in doubt and invited abuse.").

Nothing in Plaintiff's filings opposing the instant Motion undermines the foregoing analysis. On that front, Plaintiff first objected that "[d]ismissal of [this] case would not be of benefit" (Docket Entry 33 at 1), given that "[t]he purpose of this case is to find if [Defendant] is guilty of employ[ment] discrimination . . . and the extent of the discrimination to prevent future

35

occurrences" (id.; see also id. ("To dismiss the case would forbid the discovery of fault of [Defendant], which will discourage citizens who are unable to pay for representation to pursue a case.")). In related fashion, Plaintiff argued that dismissal of this action would mean that "[t]he legal process to this point would have been a waste of the [C]ourts [sic] time, taxpayer monies and [her] emotional turmoil and damage." (Id.; see also id. at 2 (repeating Plaintiff's conclusory allegations of employment discrimination and contending that "[t]o allow this case to be thrown out with such serious allegation[s] would be to aid [Defendant, a] huge corporation[,] to continue to avoid penalties for their wrong-doings," thus permitting "employees, such as Plaintiff, to become neglected" and "made to suffer and endure extensive sexual harassment and retaliat[ion] for reporting [that they] are potentially subject to mental and emotional illness," as well as "to perform tasks of which they are physically incapable," resulting in "extensive physical injury which can lead to the inability to work" and "extensive mental, emotional, and physical trauma," which may cause them "to rely on government assistance" and "add to the crisis of homelessness, suicides and/or crime").)

Those objections to dismissal ignore the fact that Plaintiff has frustrated the truth-seeking function of litigation and has wasted the time and resources of the Court and the parties by steadfastly stone-walling Defendant's efforts at discovery, in

36

contravention of the mandates of the Rules and of this Court. Phrased another way, Plaintiff's interest in using the federal judicial system to pursue her claims against Defendant does not entitle Plaintiff to obstruct Defendant's right to defend itself against those claims or to ignore court rules and directives. "To ensure that district courts have tools available to protect their truth-seeking process, the [] Rules . . . allow district courts to sanction parties who fail to meet minimum standards of conduct in many different contexts." Republic of Phil. v. Westinghouse Elec. Corp., 43 F.3d 65, 73 (3d Cir. 1994) (citing, inter alia, Rules 37 and 41). For the reasons previously articulated, the Court should impose the sanction of dismissal under Rules 37 and 41 because, throughout the discovery process, Plaintiff consistently has "fail[ed] to meet minimum standards of conduct," id.

Next, Plaintiff insisted that she "did not intentionally miss [the s]ettlement [c]onference." (Docket Entry 33 at 1.) The instant Motion, however, does not rely on Plaintiff's failure to attend the settlement conference. (See Docket Entry 24 at 1-2 (requesting dismissal of this action due to Plaintiff's failure to respond to written discovery demands and to appear for her deposition).)[16] And, in any event, Plaintiff's excuses for failing to appear at the settlement conference do not justify her absence.

_____

16 In fact, Plaintiff's failure to appear at the settlement conference (see Minute Entry dated May 28, 2024) occurred after Defendant filed the instant Motion (see Docket Entry 24 at 2).

37

For example, Plaintiff blames that nonappearance on her lack of "legal representation" (Docket Entry 33 at 1) and her "unaware[ness] that any dates of pre-trial conference were still in effect after courts [sic] made ruling to shift expenses and move to dismissal of case" (id.), but (as the Introduction shows) the undersigned Magistrate Judge made clear at the IPC that this case would proceed whether or not Plaintiff secured counsel and the Text Order dated May 23, 2024 made clear that the settlement conference would occur on May 28, 2024 (as originally set at the IPC and notwithstanding the filing of the instant Motion or anything else).

Another of Plaintiff's filings – made for the stated purpose of "oppos[ing] dismissal of the entire case" (Docket Entry 34 at 3) – starts by asserting that "Plaintiff did not intentionally miss [the] teleconference on May [sic] 23, 2024, and essentially missed [that] conference due to [a]nxiety and PTS, medical reasons" (id. at 1; see also id. at 1-2 (discussing circumstances related to telephone hearing on Discovery Motion held on April 23, 2024, which Plaintiff failed to attend)).[17]  Again, the instant Motion does not seek dismissal of this action as a sanction for Plaintiff's failure to attend the telephone hearing on the Discovery Motion.  (See Docket Entry 24 at 1-2 (requesting dismissal of this action due to Plaintiff's failure to respond to written discovery demands and to

_____

17 The Docket confirms that the Court held no proceeding on May 23, 2024, and held the only teleconference on April 23, 2024.

38

appear for her deposition).)  In addition, the record does not support Plaintiff's explanation for her nonappearance at the telephone hearing on the Discovery Motion.

To begin, although Plaintiff intimates that she did not understand that the Court would hold the hearing by telephone (as opposed to video-conference) (see Docket Entry 34 at 1), the record documents (A) that Defendant's counsel explicitly advised Plaintiff that Defendant "would like to set up a teleconference with the Magistrate Judge pursuant to Local Rule 37.1(b)" (Docket Entry 20-11 at 2),[18] (B) that, after Plaintiff assented to that proposal (see id. at 3), Defendant filed (and Plaintiff received e-mail notice, as she had requested, of) the Discovery Motion, which "request[ed] that the [undersigned] Magistrate Judge schedule a 30-minute teleconference with the parties" (Docket Entry 20 at 5), and (C) that, on April 15, 2024, the undersigned Magistrate Judge docketed (and thereby electronically served on Plaintiff consistent with her written election) a Text Order "setting a telephone hearing on [the Discovery] Motion, at 10:30 a.m. on 04/23/2024" (Text Order dated Apr. 15, 2024 (emphasis added)).  Notably, Plaintiff did not deny timely receiving that Text Order (see Docket Entry 34 at 1-2), but instead only claimed that the subsequent e-mail from the Clerk's Office with call-in instructions "somehow

_____

18 The referenced Local Rule expressly provides for "a telephone conference of no more than 30 minutes," M.D.N.C. LR 37.1(b) (emphasis added).

39

went to [her] [s]pam folder" (id. at 2) and that she did not see it
"until April 24, 2024" (id.). Moreover, although Plaintiff alleged
that, during a week-long period preceding her discovery of that e-
mail on April 24, 2024, she "was dealing with some trauma . . .
which led to an inability to deal in stressful situations i.e.
stressful emails and [to her resulting] disconnect[ion] from the
internet" (id.), as the "only way for [her] to cope with [a]nxiety
and PTSD at that specific moment" (id.), Plaintiff would have
received the Text Order setting the telephone hearing before her
week off the internet began (see Text Order dated Apr. 15, 2024).[19]

    Finally, Plaintiff has contended that her "intention has
always been to be compliant with the [C]ourt" (Docket Entry 34 at
3) and that she "would never miss a scheduled meeting or refuse to
complete any documentation or request unless [she] lack[ed] the
capacity mentally, emotionally or physically to do so" (id.). In
connection with that contention, Plaintiff attached an unsigned
letter from "a Licensed Clinical Mental Health Counselor (LCMHC)"
(Docket Entry 34-7 at 1), which states that Plaintiff "presents

_____

    19 Plaintiff also has posited that "the conference that was
scheduled for May [sic] 23, 2024, . . . was not a mandatory meeting
and [her absence] should not affect the case, to the extent of a
dismissal." (Docket Entry 34 at 3; see also id. ("Meeting was a
suggestion by [o]pposing attorney.").) Regardless of whether
Defendant's counsel proposed the telephone hearing, once the
undersigned Magistrate Judge set the telephone hearing, it became
"mandatory" (id.) and Plaintiff, having opted for electronic
service of court filings, bore the obligation to keep up with the
electronic notices of such hearings (see Docket Entry 17 at 1).

with [a] diagnosis of [] Post Traumatic Stress Disorder" (id.), with "[s]ymptoms result[ing] in her having difficulty focusing, completing anxiety-provoking tasks, and trusting others sufficiently to ask for and accept help" (id.). According to the letter, "[t]hese symptoms combined with challenging environmental circumstances of unstable housing, limited access to telephones and computer Wifi, and relying on public transportation appear to have interfered with [Plaintiff's] ability to access scheduled court requests and dates in her email and to complete the requested court documents in time for hearings." (Id.) The letter "support[s ] granting [Plaintiff] an extension to process her case while [the LCMHC] assist[s Plaintiff] with case management and connect[s] her with supportive resources." (Id.) Those sparse comments, which do not address (even superficially) Plaintiff's failure to appear at her deposition, simply do not suffice to excuse her total failure to litigate this case (which she chose to file). See Neil v. Warren Cnty. Bd. of Educ., No. 5:20CV595, 2023 WL 7135282, at *3 (E.D.N.C. Oct. 3, 2023) (unpublished) ("[The p]laintiff's conclusory and unsupported after-the-fact assertions . . . that she did not participate in her deposition due to medical and safety concerns . . . are insufficient to excuse [her] blatant disregard for her discovery obligations and for the court's orders."), recommendation adopted, 2023 WL 6990468 (E.D.N.C. Oct. 23, 2023) (unpublished), appeal filed, No. 24-1137 (4th Cir. Feb. 5, 2024).

41

In sum, every factor in the analysis under Rules 37 and 41 counsels in favor of dismissal of this action.[20]

CONCLUSION

Plaintiff's noncompliance with the discovery process as prescribed by the Rules and ordered by this Court warrants dismissal of this action.

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 24) be granted and that this action be dismissed.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 27, 2024

---

20 Recently, now-Chief Judge Eagles similarly found that the analysis under Rules 37 and 41 supported granting a motion to dismiss in another case, see Newman, 2023 WL 2477514, at *2-3, but:

> Nonetheless, in [the exercise of judicial] discretion and mindful of the strong policy favoring disposition of cases on the merits, [now-Chief Judge Eagles ] withh[e]ld judgment for fourteen days in case [the plaintiff] t[ook] steps to make herself available for deposition at a time convenient to defense counsel, respond[ed] in full to the outstanding discovery, and file[d] a motion asking that th[e o]rder [of dismissal] be set aside supported by a brief and evidence of her compliance and cooperation.

Id. at *3; see also id. ("If [the plaintiff] wants to pursue her claims, this gives her that opportunity; it also places the burden on her, where it should be, not on the defendant or the Court. If she does not take this or similar action, the Court need not waste its time or defense counsel's time with more proceedings, and judgment of dismissal will be entered."). Because the undersigned Magistrate Judge must enter a recommendation on the instant Motion, the Rules grant Plaintiff 14 days to object to dismissal. See Fed. R. Civ. P. 72(b)(2). She thus effectively receives the same final chance (as the plaintiff in Newman) to fully satisfy all her discovery obligations in the hope of avoiding dismissal.

42